IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Case No. 02-106-KI |
| | ) | (Civil Case No. 06-206-KI) |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| LANIS RICHARD METTEER, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

Eileen J. O'Connor
Assistant Attorney General
Brian D. Bailey
United States Department of Justice
Tax Division, Western Criminal Enforcement
601 D Street, N. W., Room 7334
Washington, D. C.

      Attorneys for Plaintiff/Respondent

Lanis Richard Metteer
P.O. Box 101
Antelope, Oregon 97001

      Pro Se Defendant/Petitioner

KING, Judge:

Before the court is the motion, under 28 U.S.C. § 2255, to vacate, set aside, or correct

sentence (#221) by defendant Lanis Richard Metteer.  For the reasons set forth below, I deny the

motion.

## PROCEDURAL BACKGROUND

On February 14, 2003, a jury convicted defendant of one count of corrupt or forcible

interference with the Internal Revenue Code in violation of 26 U.S.C. § 7212(a), and two counts

of willful failure to file a tax return in violation of 26 U.S.C. § 7203.  A presentence report was

ordered and prepared.  The sentencing hearing was held on September 15, 2003.  The Court

imposed concurrent sentences of 33 months and 12 months imprisonment, followed by a one-

year term of supervised release.

Defendant filed a notice of appeal on September 23, 2003.  On November 12, 2004, the

Ninth Circuit Court of Appeals affirmed defendant's conviction and sentence.

In the current motion before the court, defendant asserts that he received ineffective

assistance of counsel, during his trial and appeal, that the court was biased against him, that the

court deprived him of his due process rights under the Fourteenth Amendment, that the court

deprived him of his right to freedom of speech under the First Amendment, that the statute under

Page 2 - OPINION AND ORDER

which he was convicted is void for vagueness, and that United States v. Booker, 543 U.S. 220

(2005) renders his sentence void.

## LEGAL STANDARDS

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Under Section 2255, "a district court must grant a hearing to determine the validity of a

petition brought under that section '[u]nless the motions and the files and records of the case

*conclusively show* that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d

1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255) (emphasis in original).  The court may

deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for

relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal."

United States v. Mejia-Mesa, 153 F.3d 925, 931 (9th Cir. 1998).  Mere conclusory statements in

a § 2255 motion are insufficient to require a hearing.  United States v. Hearst, 638 F.2d 1190,

1194 (9th Cir. 1980), cert. denied, 451 U.S. 938 (1981).

## DISCUSSION

There is no need for an evidentiary hearing to decide this motion since the record

conclusively shows Metteer is not entitled to relief.

I.       Preliminary Matters

As an initial matter, I note that according to the government, Metteer's projected release date was April 6, 2006.  Nevertheless, Metteer has a one-year term of supervised release left to serve.  Accordingly, because his release from incarceration is not unconditional, this Court retains jurisdiction over his petition.

I also recognize that the government's Answer was filed late, but grant the government's request to file the Answer beyond the deadline given.

II.      Ineffective Assistance of Counsel

To successfully raise an ineffective assistance of counsel claim, Metteer must demonstrate that his attorney's performance was so deficient that it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  There is a strong presumption that the attorney acted reasonably and adequately.  Id.

Metteer identifies several examples of conduct that he argues is evidence of ineffective assistance of counsel during his trial.  His trial counsel did not object to questions the government asked Metteer about his knowledge of other tax protestors, his counsel did not object to testimony about events that occurred beyond the applicable statute of limitations, and his counsel should have objected to the testimony of various government witnesses.  Finally, Metteer reports that his trial counsel had his own conflicts with the IRS.

A.    Evidence About Other Tax Protestors

Metteer first asserts that the government painted him as a tax protestor, despite the fact that he was not, and that his attorney should have objected to the government's presentation of any such evidence.

The government responds that based on defendant's position before and during trial that paying taxes was voluntary, and his reliance on literature promulgated by tax protestors, it could properly probe Metteer about his knowledge of individuals who held similar positions. I agree, and any objection made by Metteer's counsel would have been overruled. After all, the Federal Rules of Evidence make all relevant evidence admissible, and relevant evidence is defined to be "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 and 402. Here, Metteer's motivations in failing to file a tax return or in impeding the administration of the Internal Revenue Code were relevant as the government was required to prove that Meteer acted willfully or with the necessary intent.

Evidence may only be excluded if, in relevant part, its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. None of these considerations were applicable. Furthermore, as Metteer himself admits, he testified that he was not familiar with, or did not follow, those positions held by tax protestors, eviscerating any potential prejudice to him imposed by the line of questioning.

B.      Statute of Limitations

Metteer complains that his counsel did not object when the government was allowed to question ten witnesses about Metteer's conduct that occurred outside of the relevant six year statute of limitations on day two of the trial.

As the government points out in its response to Metteer's § 2255 petition, the statute of limitations "does not bar the introduction of evidence of acts that occurred outside the limitations period." United States v. Musacchio, 968 F.2d 782, 790 (9th Cir. 1991).

In his reply, Metteer challenges the relevance of the testimony.  Metteer neither names the witnesses nor does he specify how the testimony was irrelevant or prejudicial.  He states that the testimony took place on day two of the trial.  Accordingly, I have reviewed the testimony of the first ten witnesses on that day.

As indicated above, all relevant evidence is admissible unless it is prejudicial.  The witnesses fall into several categories.  Three witnesses testified about events within the relevant statute of limitations period; Bob Gamaehlich testified about a conversation that occurred in 1997, Carol Harden testified about renting property in 1997 and 1998, and Clay Tauler testified about currently making checks out to a trust for defendant's sale of cattle.

A few witnesses testified about commercial exchanges with the defendant, when defendant first asked that checks be made out to him, and later that they be made out in the name of a trust.  Melvin Ashwill and Jerry Miller are two such witnesses.  This evidence is at the very least relevant to show the defendant's control over the trust property.  Two of defendant's investment managers, Jeff Mengis and Julie Falk, testified about defendant's placing investments in a trust.  Again, the testimony was relevant to show at the very least the defendant's control

Page 6 - OPINION AND ORDER

over the trust property.  The probative value of this evidence outweighed any prejudice to the defendant.

Marjorie McKay testified about her company's rejection of defendant's trust.  This evidence is relevant to show there was some question about the makeup of the trust such that a brokerage would reject it.  Again, the probative value of this evidence outweighed any prejudice to the defendant.

Donald Brunner prepared tax returns for the defendant's mother with the defendant's participation in the early nineties, which is relevant to show the defendant was aware of the obligation to file a tax return.  Finally, Tenly Shervey offered limited testimony as to US Bank deposits.  The probative value of this evidence outweighed any prejudicial effect.

The jury was carefully instructed that they all must agree on the act comprising the corrupt endeavor to impede the administration of the Code and that the act must have taken place on or after March 19th, 1996.  Metteer's counsel was not deficient in his representation of Metteer for having failed to "strenuously oppose[] all of the above irrelevant and prejudicial evidence." Petitioner's Reply at 9.

C.      Government Witness Testimony

Metteer argues that his counsel should have moved to strike the testimony of the government's first witness, Cheryl Paine, or at least moved for a cautionary instruction, because Paine purportedly testified that she did not know whether the letter she sent to Metteer contained an accurate quote of the relevant statutory language obligating him to file a tax return.

The relevant testimony unfolded as follows:

Q:  Did you read these letters before you sent them out?

Page 7 - OPINION AND ORDER

A: Yes.

Q: And as part of your training, you were familiar with 6011?

A: The training that I had did not specifically focus on this section.  It talks about issues in tax returns.

**Q: So you didn't know whether what you were quoting in your letter was true and accurate or not, correct?**

**A: No.**

Transcript of Trial (Tr.) at 208. (emphasis added).

The government asserts that this testimony means Paine "affirmed her confidence in the letter's accuracy."  Government's Answer to Defendant's Motion Under 28 U.S.C. 2255 at 6. Regardless of how Paine's testimony is interpreted, she testified that the letter was a form letter that she did not prepare.  In addition, the letter did not contain an inaccurate quote, it just did not quote the entire statutory provision.  If anything, it was beneficial to Metteer's defense if the jury understood Paine's testimony to be that she did not know whether the letter accurately quoted the statute; the jury could conclude that Metteer acted reasonably in ignoring the letter.  Accordingly, I find that Metteer's trial counsel did not perform deficiently in failing to "strenuously object to any further testimony from her, and move for a judgment of acquittal or at least move to dismiss the indictment with prejudice."  Metteer's Memorandum of Points and Authorities in Support of Motion ("Metteer's Memo.") at 7.

Metteer also asserts that his counsel acted in a deficient manner by not moving to strike Patricia Whitney's testimony about the Christian Patriot Association's warehouse bank. However, counsel objected to the testimony on several occasions, and that was all he was required to do in order to effectively represent Metteer.  As the government points out, whether the warehouse bank was illegal or not, Whitney's testimony about Metteer's deposits was relevant to the charge that he failed to file tax returns and her testimony about the bank's aim to

hide money was relevant to the interference count. The fact that Whitney testified she did not

know whether the deposits constituted income was only helpful to defendant's cause. Counsel

did not represent Metteer in an ineffective manner.

Finally, Metteer takes issue with Nicholi Ferrell's testimony, arguing that his counsel

should have objected to her testimony because she was not a proper expert in abusive trusts and

should have better probed her credentials.

Counsel questioned Ferrell about her qualifications, including her knowledge of the law

of trusts. Ferrell had worked for the IRS for over 15 years, and during 7 of those years she

audited abusive tax systems including trusts. When questioned by counsel, she was able to

describe a Massachusetts business trust and the tax consequences of such a trust in Oregon. She

testified that she had "worked over 200 years of abusive trusts. In fact, it's probably close to 250

years of abusive trusts I've worked. That's tax years." Tr. 952-53. I take note of Metteer's

argument that his counsel should have demanded to see a copy of the book Ferrell said she wrote

on abusive trusts, but nevertheless counsel's questions and Ferrell's answers satisfied the

standard set forth in Federal Rule of Evidence 702; based on Ferrell's knowledge and experience,

Ferrell could assist the trier of fact by offering testimony on abusive trusts.

Metteer makes much of Ferrell's testimony that "we don't call them trusts" when the

grantor, beneficiary and trustee are all the same person and accuses her of reversing herself in

later testimony when she stated a living trust could have the same person be the grantor, trustee

and beneficiary. Tr. 991 and 1018. The testimony was not contradictory. Ferrell was testifying

as to how the IRS treats trusts where the grantor retains control over the property interest such

that he will be treated as the owner of the property for income tax purposes, as if no trust were

Page 9 - OPINION AND ORDER

created.  I.R.C. §§ 671-677.  She testified that a living trust would be treated in the same fashion.

Tr. 1019.

He also criticizes Ferrell for equating a living will with a living trust,[1] but any purported

mistake does not mean that Ferrell was unqualified to testify as an expert witness on abusive

trusts.  Furthermore, any purported mistake was not prejudicial to Metteer since it was irrelevant

to the issues at hand.  Finally, Metteer asserts Ferrell wrongly identified the need for five

elements to create a trust, as opposed to the three listed in Black's Law Dictionary.  I note that

other sources describe the need for five elements.  Robert L. Mennell, Wills and Trusts in a

Nutshell 189 (2d ed. 1994) (the transfer, the property interest, the grantor, the trustee and the

beneficiary).

Metteer's counsel did not provide deficient representation in any of the ways identified in

Metteer's petition.

D.    Conflict of Interest

According to Metteer, he and his counsel were on their way to trial when his counsel

stated that he had experienced past problems with the IRS and that since the time he had agreed

to represent Metteer, counsel was again faced with such difficulties.  Metteer indicates in his

memorandum that he decided not to ask any questions, but that "serious concerns began to arise

from that point on."  Metteer's Memo. at 24.

The government argues this is a "late and unsupported report" that is "insufficient to raise

the issue."  Government's Answer to Defendant's Motion Under 28 U.S.C. § 2255 at 2.

---

[1]Ferrell could have been equating a living will with a grantor trust.  The testimony is
somewhat unclear.  Tr. 1020-21.

Page 10 - OPINION AND ORDER

The government is incorrect. "In order to establish a violation of the Sixth Amendment

[based on a conflict of interest], a defendant who raised no objection at trial must demonstrate

that an actual conflict of interest adversely affected his lawyer's performance. If this standard is

met, prejudice is presumed." United States v. Wells, 394 F.3d 725, 732 (9th Cir. 2005) (internal

citations omitted). An actual conflict is "a conflict that affected counsel's performance–as

opposed to a mere theoretical division of loyalties." Id., quoting Mickens v. Taylor, 535 U.S.

162, 171 (2002). A defendant must show that "some plausible alternative defense strategy or

tactic might have been pursued but was not and that the alternative defense was inherently in

conflict with or not undertaken due to the attorney's other loyalties or interests." Id., quoting

United States v. Stantini, 85 F.3d 9, 16 (2d Cir. 1996).

Metteer has substantiated his assertion that counsel made the comment by submitting a

letter from his trial counsel in which counsel admits to having said that he had tax problems.

Counsel explains in the letter that he did so because he "wanted [Metteer] to know that I was

angry with the IRS for a personal reason as well." Petitioner's Reply, Ex. A. However, Metteer

has offered no "plausible alternative defense strategy or tactic" that should have been undertaken.

As set forth above, I have found no deficiencies in counsel's representation of Metteer.

III.     Court's Errors

Defendant challenges several rulings made by the court. Case law establishes that only

constitutional claims, jurisdictional claims, and claims of error so fundamental as to have

resulted in a complete miscarriage of justice are cognizable on collateral attack. United States v.

Addonizio, 442 U.S. 178, 184-86 (1979). Since defendant asserts violations of his constitutional

rights, I have assumed without deciding that the defendant's challenges are cognizable under this

standard.

>A.      Daubert Hearing

Metteer takes issue with the court's holding a hearing under Daubert v. Merrell Dow, 509

U.S. 579 (1993), for all of his experts, but not holding a similar hearing to test the government's

experts.  In a related argument, Metteer asserts that it was a violation of his due process rights

that the Court subsequently permitted the expert testimony offered by the government, but

precluded the expert testimony he offered.  Metteer asserts that he needed to show that he relied

on an expert in forming his good faith belief that he was not required to pay taxes, and that the

court's ruling foreclosed this showing.

In addition, the Court rejected much of the expert testimony because the opinions were

"not accepted in general by his profession or anyone who deals with taxes.  I find it is not

reliable.  It is simply his interpretation of what the law says, and it would not assist the jury."  Tr.

1092.  He argues this rationale was a misapplication of Daubert, particularly that the Court

precluded testimony on the basis that the opinions were not "generally accepted" by people in the

experts' profession.

As the government points out, the Court held a Daubert hearing on Metteer's experts at

the request of the government.  As for Metteer's assertion that he needed the testimony to support

his defense, Metteer could not have relied on any of the opinions offered by his experts in

forming a belief about paying taxes.  He had not met or spoken to any of them except Joe

Banister, and he spoke with Banister after the dates of the charged tax crimes.  In fact, his

testimony was that he came to his good faith belief after studying the statute and regulations on

his own.  Metteer's Memo. at 46.

Finally, the court properly applied <u>Daubert</u> in excluding Metteer's expert testimony.

While the Supreme Court found that a test premised solely on whether an expert's opinion had

"gained general acceptance in the particular field in which it belongs" was not appropriate, it was

one of the factors a court could consider.  Indeed, "[w]idespread acceptance can be an important

factor in ruling particular evidence admissible and a known technique which has been able to

attract only minimal support within the community may properly be viewed with skepticism."

<u>Daubert</u>, 509 U.S. at 586, 594.  Here, the Court considered not only whether the proffered

opinions of the experts were generally accepted, but also whether the testimony would assist the

trier of fact.  The court determined that the testimony was simply the experts' interpretation of

the law, but "it is well settled that the judge instructs the jury on the law."  <u>United States v.</u>

<u>Brodie</u>, 858 F.2d 492, 496-7 (9th Cir. 1988), overruled on other grounds by <u>United States v.</u>

<u>Morales</u>, 108 F.3d 1031 (9th Cir. 1997).  This is a proper consideration under Federal Rule of

Evidence 702 and <u>Daubert</u>.

The court did not violate any of Metteer's constitutional rights.

B.     <u>Jury Instruction No. 19</u>

The Court instructed the jury that,

> A defendant does not act willfully fail to file federal income tax returns if he
> believes, in good faith, that he is acting within the law, or that his actions comply
> with the law.  A good faith belief is one that is honestly and genuinely held.
> Therefore, if a defendant actually believed that what he was doing was in
> accordance with the tax statutes, he cannot be said to have a criminal intent to
> willfully fail to file tax returns.  A belief need not be objectively reasonable to be
> held in good faith.  **Nevertheless, in deciding whether the belief was honestly**

**or genuinely held, you may consider as a factor whether the defendant's stated belief about the tax statutes was reasonable.**

Tr. 1472-73.

Metteer takes issue with the portion of the jury instruction that is emphasized above, claiming that it is contrary to the Supreme Court's holding in Cheek v. United States, 498 U.S. 192 (1991).  However, Cheek does not preclude the Court from telling the jury what it *may* consider in determining whether a defendant acted willfully; instead, Cheek held that a court cannot tell a jury to disregard evidence about the defendant's good faith belief that his tax evasion was lawful.

In addition, Metteer implies that the jury's question about the instruction was related to this issue, when in fact the jury questioned only whether this instruction applied to count one as well as to counts two and three.  Metteer also misunderstands the colloquy I had with counsel prior to answering the jury's question, assuming that it prejudiced him.  In fact, my ruling benefitted him.  As a result of my ruling, the jury was instructed that it could consider Metteer's good faith in determining whether he acted with the intent to secure an unlawful benefit for purposes of count one.

The jury instruction did not violate any of Metteer's constitutional rights.

C.      Sentencing

Metteer contends that the Court somehow violated his First Amendment rights during the sentencing phase of the trial when the Court purportedly wrongly attributed to him the testimony that he "disagreed with the law."  Metteer seems to believe that I made this finding in order to convict him.  However, Metteer had already been convicted by a jury.

I made the statement in the context of determining whether the obstruction of justice

enhancement applied under the United States Sentencing Guidelines.  I specifically stated that I

was not basing the enhancement on the government's argument that Metteer perjured himself by

testifying he believed he was acting within the law, since the jury rejected that testimony,

because I believed "Metteer testified that he disagreed with the law and he held that belief

honestly."  Sentencing Transcript of Proceedings at 28 (Sept. 15, 2003).  Accordingly, if Metteer

did not testify as I remembered, he was not prejudiced by my finding.

IV.    Remaining Arguments

Metteer asserts that the statute under which he was charged in count one of the

indictment, 26 U.S.C. § 7212(a), is void for vagueness.  Specifically, Metteer challenges the

portion of the statute making it illegal to act "in any other way corruptly or by force or threats of

force" to interfere with the administration of the internal revenue laws.

A statute may be impermissibly vague if it does not provide adequate notice that the

conduct is illegal.  Maynard v. Cartwright, 486 U.S. 356, 361 (1988).  The Ninth Circuit has

interpreted "corruptly" to mean any act "performed with the intention to secure an unlawful

benefit for oneself or for another."  United States v. Hanson, 2 F.3d 942, 946 (9th Cir. 1993).

Employing this definition, courts in other circuits have rejected the argument that the statute is

unconstitutionally vague, and have specifically dealt with the "omnibus clause" Metteer

challenges here.  See United States v. Popkin, 943 F.2d 1535, 1540 (11th Cir. 1991) ("We believe

that . . . the use of 'in any other way corruptly' in the second clause gives clear notice of the

breadth of activities that are proscribed");  United States v. Kelly, 147 F.3d 172, 176 (2d Cir.

1998); United States v. Kassouf, 144 F.3d 952, 959 (6th Cir. 1998); United States v. Reeves, 752

Page 15 - OPINION AND ORDER

F.2d 995, 999 (5th Cir. 1985).  As pointed out by the court in United States v. Brennick, 908 F.

Supp. 1004, 1012 (D. Mass. 1995), the statute

> prohibits those acts which "in any . . . way" "obstruct" or "impede" the IRS from
> carrying out the tax laws, so long as they are done either through force or threats
> of force, or corruptly.  It is clear that the acts which the defendant is charged with
> committing impeded the IRS from carrying out the tax laws, as they had the effect
> of hiding from the IRS the extent to which and the reasons why defendant was
> failing to fulfill his obligation to report and pay over withholding tax to the
> government.  A defendant committing such acts would be on notice that they
> could result in criminal prosecution if they were done 'corruptly' within the
> meaning of the statute.

Metteer's challenge to his sentence on the basis that the statute is unconstitutionally

vague holds no water.

Finally, Metteer asserts that the Supreme Court's decision in United States v. Booker, 543

U.S. 220 (2005) renders his sentence void because it was based on the United States Sentencing

Guidelines which were mandatory at the time.  The Ninth Circuit has held that Booker "is not

retroactive, and does not apply to cases on collateral review where the conviction was final as of

the date of Booker's publication."  United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005).

Thus, Metteer's section 2255 motion must be rejected on this basis.

V.      Appellate Counsel

Metteer asserts that given the errors he identified in his memorandum, his appellate

counsel was deficient for failing to raise the same arguments in the appeal.  Since I have resolved

all issues against Metteer, it follows that Metteer's counsel did not render deficient

representation.

## CONCLUSION

The motion, under 28 U.S.C. § 2255, to vacate, set aside, or correct sentence (#221) by

defendant Lanis Richard Metteer is denied.  Petitioner's Motion for Summary Judgment (#225)

was not considered in resolving this petition and is denied as moot.

IT IS SO ORDERED.

Dated this _____20th_____ day of April, 2006.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge